UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Nichole Ingle,

　　　　v.　　　　　　　　　　　　　　　　Case No. 10-cv-103-SM

Michael J. Astrue, Commissioner,
Social Security Administration,

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), claimant, Nichole Ingle,

moves to reverse and remand the Commissioner's decision denying

her application for Social Security disability insurance benefits

under Title II of the Social Security Act, 42 U.S.C. § 423.  The

Commissioner, in turn, moves for an order affirming his decision.

For the reasons given below, I recommend that the matter be

remanded to the Administrative Law Judge ("ALJ") for further

proceedings consistent with this opinion.

**Standard of Review**

The applicable standard of review in this case provides, in

pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of

social security disability benefits unless 'the [Commissioner]

has committed a legal or factual error in evaluating a particular

claim.' "  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st

Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885

(1989)).

    As for the statutory requirement that the Commissioner's

findings of fact be supported by substantial evidence, "[t]he

substantial evidence test applies not only to findings of basic

evidentiary facts, but also to inferences and conclusions drawn

from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-

18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730

(2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than

[a] mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a

conclusion.' "  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401

(1971)).  Finally, when determining whether a decision of the

Commissioner is supported by substantial evidence, the court must

"review[] the evidence in the record as a whole."  Irlanda Ortiz

v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991) (quoting

Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

---

    [1] "It is the responsibility of the [Commissioner] to
determine issues of credibility and to draw inferences from the
record evidence.  Indeed, the resolution of conflicts in the

**Background**

The parties have submitted a Joint Statement of Material
Facts (document no. 13).  That statement is part of the court's
record and will be summarized here, rather than repeated in full.

Ingle is five feet six inches tall and weighs approximately
310 pounds.  Her most recent employment was as a cashier at
Walmart, a position she left on March 15, 2006.  At the hearing
before the ALJ, Ingle said she quit her Walmart job mainly
because of "really, really bad flank pain on the left side."
(Administrative Transcript (hereinafter "Tr.") at 8.)  She also
mentioned knee problems, carpal tunnel syndrome, arthritis, and
back pain.  (Tr. at 8-9.)

Ingle has an extensive medical history including treatment
for a left kidney impairment (which dates from early childhood),
degenerative joint disease in both knees, carpal tunnel syndrome,
shoulder pain, back pain (initially resulting from a motor
vehicle accident in 2000), and breast cancer.  The record
includes the following relevant opinion evidence: (1) a New
Hampshire Department of Health & Human Services ("HHS") physical
capacity evaluation, completed by internist James Stauber on

---

evidence is for the [Commissioner], not the courts."  Irlanda
Ortiz, 955 F.2d at 769 (citations omitted).  Moreover, the court
"must uphold the [Commissioner's] conclusion, even if the record
arguably could justify a different conclusion, so long as it is
supported by substantial evidence."  Tsarelka v. Sec'y of HHS,
842 F.2d 529, 535 (1st Cir. 1988).

March 23, 2007;[2] (2) an HHS physical capacity evaluation,

completed by family-practice physician Chong So on August 30,

2007; (3) a residual functional capacity assessment, completed by

state-agency medical consultant Burton Nault on April 29, 2008;[3]

(4) a medical source statement of ability to do work-related

activities (physical), completed by Dr. So on June 17, 2008;[4] and

(5) a medical source statement of ability to do work-related

activities (physical), completed by Dr. So on August 4, 2009.[5]

---

[2] The Joint Statement of Material Facts gives the date of
Dr. Stauber's evaluation as March 23, 2009, but that appears to
be incorrect.  (See Tr. at 563-66.)

[3] Dr. Nault determined that Ingle could frequently lift and
carry ten pounds, stand and/or walk (with normal breaks) for at
least two hours in an eight-hour workday, sit (with normal
breaks) for about six hours in an eight-hour workday, and push
and pull without limitation.  (Tr. at 391.)  Dr. Nault's findings
are consistent with the ability to perform the full range of
sedentary work.  See 20 C.F.R. § 416.967(a) (setting out the
physical-exertion requirements for sedentary work).

[4] Dr. So determined that Ingle could occasionally lift and
carry up to ten pounds (Tr. at 399), and could sit one hour at a
time for a total of six hours in an eight-hour workday, stand
five minutes at a time for a total thirty minutes in an eight-
hour workday, and walk ten minutes at a time for a total of sixty
minutes in an eight-hour workday (Tr. at 400).

[5] Dr. So opined that Ingle could occasionally lift and carry
up to ten pounds (Tr. at 591), and could sit one hour at a time
for a total of six hours in an eight-hour workday, stand ten
minutes at a time for a total of one hour in an eight-hour
workday, and walk fifteen minutes at a time for a total of two
hours in an eight-hour workday (Tr. at 592).

Ingle applied for Social Security disability insurance
benefits on March 13, 2008.  She claimed to have been unable to
work since she left her job at Walmart due to kidney problems,
arthritis in her feet, and problems with her knees and neck.
(Tr. at 109.)  At her hearing before the ALJ, Ingle described her
daily activities, which included getting her four-year-old-twin
sons dressed in the morning, feeding them breakfast and lunch,
performing housework such as doing laundry, preparing relatively
simple dinners for her family, and putting her sons to bed.  (Tr.
at 9-12.)  She also testified that she needed to take breaks
while engaging in those activities due to her pain.  (Tr. at 30.)
In addition, Ingle testified that her carpal tunnel syndrome
along with her bad back and knees preclude her from doing dishes
by hand (Tr. at 9-10), and that knee pain makes it difficult for
her to make beds and retrieve things from low cupboards (Tr. at
13).

After the hearing, the ALJ issued a decision which included
the following findings:

> 3.  The claimant has the following severe impairments:
> (1) mildly atrophic left kidney, (2) obesity, (3) mild
> degenerative joint disease (20 CFR 404.1520(c)).[6]
>
> . . . .

---

[6] The ALJ also noted the following non-severe impairments:
dermatitis of the foot, carpal tunnel syndrome, bilateral
shoulder pain, and back pain.  (Tr. at 28.)

> 4.  The claimant does not have an impairment or
> combination of impairments that meets or medically
> equals one of the listed impairments in 20 CFR Part
> 404, Subpart P, Appendix 1 (20 CFR 404.1520(d),
> 404.1525, 404.1526).
>
> . . . .
>
> 5.  After careful consideration of the entire record,
> the undersigned finds that the claimant has the
> residual functional capacity to perform the full range
> of sedentary work as defined in 20 CFR 404.1567(a).
> Specifically, the claimant can frequently lift and
> carry 10 pounds, stand and/or walk for at least 2 hours
> in an 8-hour workday, sit for a total of 6 hours in an
> 8-hour workday, and can perform unlimited pushing and
> pulling.  Further, the claimant can occasionally climb
> stairs and ladders, balance, stoop, kneel, crouch, and
> crawl.
>
> . . . .
>
> 6.  The claimant is capable of performing past relevant
> work as a data entry worker.  This work does not
> require the performance of work-related activities
> precluded by the claimant's residual functional
> capacity (20 CFR 404.1565).[7]

(Tr. at 27, 29, 31.)

In determining that Ingle retained the residual functional

capacity to perform the full range of sedentary work, the ALJ

found that Ingle's "medically determinable impairments could

reasonably be expected to cause the alleged symptoms" (Tr. at

30), but further found that her "statements concerning the

---

[7] In addition to finding that Ingle had the residual
functional capacity to perform her past relevant work, the ALJ
went on to find, in the alternative, that in light of Ingle's
capacity to perform the full range of sedentary work, there were
jobs that exist in significant numbers in the national economy,
in addition to her past relevant work, that she could also
perform.  (Tr. at 31-32.)

intensity, persistence and limiting effects of these symptoms
[were] not credible to the extent they are inconsistent with the
above residual functional capacity assessment" (Tr. at 30).  The
ALJ also stated that "[i]n terms of the claimant's alleged
inability to engage in sustain[ed] work activities even at a
sedentary level . . . the claimant allegations are inconsistent
with the medical evidence of record."  (Tr. at 30.)  After
rejecting Ingle's allegations of disabling pain, the ALJ adopted
the findings of Dr. Nault and stated his reliance on "claimant's
testimony regarding her ability to perform daily activities" (Tr.
at 31).  Finally, the ALJ accepted Dr. So's findings in part, but
also rejected them in part because they appeared to be both
internally inconsistent and inconsistent with the medical
evidence of record, and because they included "multiple changes
which appear to have been incorporated after discussion with the
claimant."  (Tr. at 30.)


## Discussion

According to Ingle, the ALJ's decision should be reversed,
and the case remanded, because the ALJ: (1) erred in assessing
her credibility and residual functional capacity; (2) failed to
properly consider her obesity when determining her residual
functional capacity; and (3) failed to consider the impact of her
non-severe impairments when determining her residual functional

capacity.  The Commissioner disagrees, categorically.  Because

Ingle's first argument is meritorious, and entitles her to a

remand, there is no need to consider her second and third

arguments.

To be eligible for disability insurance benefits, a person

must: (1) be insured for such benefits; (2) not have reached

retirement age; (3) have filed an application; and (4) be under a

disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in

this case is whether the ALJ correctly determined that Ingle was

not under a disability.

For the purpose of determining eligibility for disability

insurance benefits,

> [t]he term "disability" means . . . inability to engage
> in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment
> which can be expected to result in death or which has
> lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a
> disability only if [her] physical or mental impairment
> or impairments are of such severity that [she] is not
> only unable to do [her] previous work but cannot,
> considering [her] age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in which
> [she] lives, or whether a specific job vacancy exists
> for [her], or whether [she] would be hired if [she]
> applied for work.  For purposes of the preceding
> sentence (with respect to any individual), "work which
> exists in the national economy" means work which exists

in significant numbers either in the region where such
individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is disabled for the

purpose of determining eligibility for disability insurance

benefits, an ALJ is required to employ a five-step process.  See

20 U.S.C. §§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform past
> relevant work, then the application is denied; 5) if
> the [claimant], given his or her residual functional
> capacity, education, work experience, and age, is
> unable to do any other work, the application is
> granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 1520).

The claimant bears the burden of proving that she is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  She

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) plaintiff's subjective

claims of pain and disability as supported by the
testimony of the plaintiff or other witness; and (3)
the plaintiff's educational background, age, and work
experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d

5, 6 (1st Cir. 1982)).

Ingle's first argument is that the ALJ erroneously found her

claims of disabling pain not to be credible, and erroneously

found that she had the residual functional capacity to perform

sedentary work.  Ingle claims the finding erroneous because in

making both of those determinations, the ALJ failed to properly

credit her testimony that when she carried out her daily

activities, she had to take frequent breaks due to the pain she

was experiencing.  Ingle's point is well taken, and dispositive.

According to Social Security Ruling ("SSR") 96-7p, "an

individual's statement(s) about his or her symptoms[8] is not in

itself enough to establish the existence of a physical or mental

impairment or that the individual is disabled," 1996 WL 374186,

at *2.  When "symptoms, such as pain, fatigue, shortness of

breath, weakness, or nervousness," id., are alleged, SSR 96-7p

prescribes a two-step evaluation process:

---

[8] "A symptom is an individual's own description of his or
her physical or mental impairment(s)."  SSR 96-7p, 1996 WL
374186, at *2.

* First, the adjudicator must consider whether
there is an underlying medically determinable physical
or mental impairment(s) – i.e., an impairment(s) that
can be shown by medically acceptable clinical and
laboratory diagnostic techniques – that could
reasonably be expected to produce the individual's pain
or other symptoms. . . .  If there is no medically
determinable physical or mental impairment(s), or if
there is a medically determinable physical or mental
impairment(s) but the impairment(s) could not
reasonably be expected to produce the individual's pain
or other symptoms, the symptoms cannot be found to
affect the individual's ability to do basic work
activities.

* Second, once an underlying physical or mental
impairment(s) that could reasonably be expected to
produce the individual's pain or other symptoms has
been shown, the adjudicator must evaluate the
intensity, persistence, and limiting effects of the
individual's symptoms to determine the extent to which
the symptoms limit the individual's ability to do basic
work activities.  For this purpose, whenever the
individual's statements about the intensity,
persistence, or functionally limiting effects of pain
or other symptoms are not substantiated by objective
medical evidence, the adjudicator must make a finding
on the credibility of the individual's statements based
on a consideration of the entire case record.

Id.  In addition:

When additional information is needed to assess
the credibility of the individual's statements about
symptoms and their effects, the adjudicator must make
every reasonable effort to obtain available information
that could shed light on the credibility of the
individual's statements.  In recognition of the fact
that an individual's symptoms can sometimes suggest a
greater level of severity of impairment than can be
shown by the objective medical evidence alone, 20 CFR
404.1529(c) and 416.929(c) describe the kinds of
evidence, including the factors below, that the
adjudicator must consider in addition to the objective
medical evidence when assessing the credibility of an
individual's statements:

>    1. The individual's daily activities;
>
>    2. The location, duration, frequency, and
>    intensity of the individual's pain or other
>    symptoms;
>
>    3. Factors that precipitate and aggravate the
>    symptoms;
>
>    4. The type, dosage, effectiveness, and side
>    effects of any medication the individual takes or
>    has taken to alleviate pain or other symptoms;
>
>    5. Treatment, other than medication, the
>    individual receives or has received for relief of
>    pain or other symptoms;
>
>    6. Any measures other than treatment the
>    individual uses or has used to relieve pain or
>    other symptoms (e.g., lying flat on his or her
>    back, standing for 15 to 20 minutes every hour, or
>    sleeping on a board); and
>
>    7. Any other factors concerning the individual's
>    functional limitations and restrictions due to
>    pain or other symptoms.

Id. at *3.

Here, the ALJ did determine that there was an underlying medically determinable physical impairment that could reasonably be expected to produce Ingle's pain (Tr. at 30), thus completing the first step of the SSR 96-7p evaluation process.  The problem arises at the second step.

In his decision, the ALJ stated: "In terms of the claimant's alleged inability to engage in sustain[ed] work activities even at a sedentary level, the undersigned finds that the allegations are inconsistent with the medical evidence of record."  (Tr. at 30.)  That statement appears to be directed toward the ALJ's

obligation to make a credibility assessment when "the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence."  SSR 96-7p, 1996 WL 374186, at *2.

If the ALJ was trying to establish that Ingle's allegations about disabling pain were not substantiated by objective medical evidence, the cursory statement quoted above is insufficient.  As Baker v. Astrue explains: "If after evaluating the objective findings, the ALJ determines that the claimant's reports of symptoms are significantly greater than what could be reasonably anticipated from the objective evidence, the ALJ must then consider other relevant information."  Civil Action No. 08-11812-RGS, 2010 WL 3191452, at *8 (D. Mass. Aug. 11, 2010) (emphasis added).  In other words, before "weigh[ing] the credibility of a claimant's statements about pain . . . [t]he ALJ must first find a lack of support in objective medical evidence for the allegations of pain."  Caille v. Comm'r of Soc. Sec., Civil No. 09-1305, 2010 WL 1424725, at *3 (D.P.R. Apr. 6, 2010) (emphasis added).

In this case, the ALJ did say that Ingle's allegations concerning pain were "inconsistent with the medical evidence of record" (Tr. at 30), but he provided no analysis supporting that conclusion and failed to identify the medical evidence that was

supposedly inconsistent with Ingle's allegations.  Thus, the

decision does not demonstrate any evaluation of the objective

medical evidence or describe a proper finding concerning the

asserted lack of support for Ingle's allegations.  As in Santiago

v. Astrue, Civil Action No. 09-30006-KPN, 2009 WL 3517611 (D.

Mass. Oct. 14, 2009), which resulted in a remand, the ALJ in this

case "did not discuss . . . how Plaintiff's statements were

inconsistent with the objective medical evidence," id. at *8

(emphasis added).[9]  In short, the ALJ's decision does not contain

an adequate determination that Ingle's symptoms were not

substantiated by objective medical evidence.

Even if the ALJ's decision did adequately establish that

Ingle's symptoms were not substantiated by the medical evidence

of record, the ALJ's credibility determination falls short in its

consideration of the seven factors listed in 20 C.F.R. §

404.1529(c)(3) and SSR 96-7p.  While SSR 96-7p says that the

adjudicator must consider the seven factors listed therein, the

ALJ's discussion of Ingle's credibility says nothing about: the

location, duration, frequency, or intensity of her pain (factor

two); the factors that precipitate and aggravate her pain (factor

---

[9] The Commissioner points out that the ALJ did discuss the
medical evidence of record in his decision.  But he did so in the
portion of the decision devoted to determining whether Ingle had
a severe impairment, not the portion devoted to assessing the
impact of her symptoms on her residual functional capacity.
Thus, the ALJ made no meaningful connection between the medical
evidence and Ingle's symptoms.

14

three); her use of pain medication (factor four); treatment other than medication she has tried (factor five); or measures other than treatment that she has used to alleviate her pain (factor six).  While an ALJ may not be obligated to slavishly discuss each of the factors listed in SSR 96-7p, see Crocker v. Astrue, No. 07-220-P-S, 2008 WL 2775980, at *4 (D. Me. June 30, 2008), more analysis is required than is provided in this case.

Moreover, the single factor that is addressed in the ALJ's decision, Ingle's daily activities, is not handled adequately. First, when the ALJ determined Ingle's allegation of disabling pain not to be credible, he focused on her ability to perform household chores and take care of her family.  But, despite having reported her testimony that she is able to perform those activities only by taking frequent breaks, the ALJ did not take that testimony into account in his credibility assessment, either in the context of factor one (daily activities) or factor six (measures other than treatment that alleviate pain).[10]  Moreover, the ALJ's credibility assessment devolves into near circularity when it says, in essence, that Ingle's ability to work around the

---

[10] The Commissioner argues that the ALJ "did not find Plaintiff's reports of taking frequent breaks to be credible," (Resp't's Mem. (document no. 12-1), at 11), but that is both a misreading of the decision and entirely unsupported by substantial evidence, such as testimony that Ingle did not take frequent breaks, or that she undertook other activities without needing breaks.  Rather than finding Ingle's testimony about frequent breaks not to be credible, the ALJ actually determined that her claims of disabling pain were not credible.

15

house and care for her family diminishes the credibility of her
allegation that she is able to do those things only by taking
frequent breaks.  That Ingle is able to perform certain
activities is not evidence that she is able to perform them
without taking frequent breaks to recover from the pain they
engender.

In sum, the ALJ's assessment of Ingle's credibility, and his
determination of her residual functional (which rests on the
credibility assessment), are flawed by the ALJ's failure to
properly address Ingle's allegations of disabling pain within the
framework established in SSR 96-7p.  On that basis, his decision
is not supported by substantial evidence, and must be remanded.


### Conclusion

For the reasons given above, I recommend that: (1) the
Commissioner's motion for an order affirming his decision
(document no. 12) be denied; (2) claimant's motion for an order
reversing and remanding the Commissioner's decision (document no.
10) be granted; and (3) pursuant to sentence four of 42 U.S.C. §
405(g), this matter be remanded to the ALJ for further
proceedings.

Any objections to this report and recommendation must be
filed within fourteen (14) days of receipt of this notice.
Failure to file objections within the specified time waives the

right to appeal the district court's order.  See Unauth. Practice

of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992);

United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).


_____
Landya B. McCafferty
Magistrate Judge

November 8, 2010

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, Esq.